**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ARA APRAHAMIAN,
14 Catalpa Court
Bardonia, NY 10954,

                Petitioner,

    - v. -

UNITED STATES DEPARTMENT OF
JUSTICE,
950 Pennsylvania Avenue, NW
Washington, DC 20530

                Respondent.

Case: 1:25–mc–00048
Assigned To : Friedrich, Dabney L.
Assign. Date : 4/16/2025
Description: Misc.

**MOTION TO COMPEL AND**
**INCORPORATED**
**MEMORANDUM OF LAW**

**Oral argument requested**

**MOTION TO COMPEL**
**COMPLIANCE WITH RULE 45 SUBPOENAS**

**REDACTED PUBLIC VERSION**

G. Robert Gage, Jr. (*pro hac forthcoming*)
Gage Spencer & Fleming LLP
410 Park Avenue
New York, New York 10022
(212) 768-4900
grgage@gagespencer.com

Fabien M. Thayamballi (D.D.C. #1014910)
Christopher Johnson (*pro hac forthcoming*)
Shapiro Arato Bach LLP
1140 Avenue of the Americas, 17th Floor
New York, New York 10036
(212) 257-4880
fthayamballi@shapiroarato.com
cjohnson@shapiroarato.com

*Attorneys for Petitioner Ara Aprahamian*



RECEIVED

APR 16 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 4

    A.   The Government Dropped Its Criminal Case Against Mr. Aprahamian,
         Which Relied Heavily On The Testimony Of Cooperating Witnesses ..................... 4

    B.   Mr. Aprahamian Needs To Challenge Testimony From The Same Witnesses
         In The Civil Proceedings Against Him ...................................................... 8

    C.   The Government Refuses To Produce Its Notes On Work-Product Grounds,
         But Has Produced Interview Memoranda In Redacted Form .................................. 10

    D.   The Government Is Obstructing Mr. Aprahamian's Ability To Litigate
         This Motion ......................................................................................... 11

LEGAL STANDARD ........................................................................................................ 14

ARGUMENT ...................................................................................................................... 15

I.    The Government Waived Work-Product Protection By Producing The Materials
     In Criminal Discovery ............................................................................................ 15

II.   The Government Also Waived Work-Product Protection By Selectively Producing
     Materials In Response To The Subpoenas ................................................................ 17

III.  Work-Product Protection Is Unavailable, Or At Least Extraordinarily Weak,
     Because The Rationales Behind The Privilege Do Not Apply Here .............................. 19

IV.  Mr. Aprahamian's Need For The Materials Overrides Any Work-Product Protection .... 22

    A.   At Most, The Materials Are Fact Work Product, Not Opinion Work Product ......... 22

    B.   Mr. Aprahamian's Need For The Materials Overrides Any Fact Work Product
         Protection ........................................................................................... 24

    C.   The Circumstances Would Be Sufficiently Compelling To Require The
         Production Of Any Opinion Work Product .............................................. 27

V.   The Materials Are Not Subject To Federal Rule Of Criminal Procedure 6(e) ................ 28

VI.   There Is No Basis For The Government's Redactions Of Names .................................... 30

CONCLUSION.................................................................................................................. 32

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Abdell v. City of New York*,
   No. 05-cv-8453, 2006 WL 2664313 (S.D.N.Y. Sept. 14, 2006)..............................................21

*Alexander v. F.B.I.*,
   186 F.R.D. 21 (D.D.C. 1998) ....................................................................................................14

*Bagwell v. U.S. Dep't of Just.*,
   588 F. Supp. 3d 58 (D.D.C. 2022) ....................................................................................29, 30

*Bartko v. U.S. Dep't of Just.*,
   898 F.3d 51 (D.C. Cir. 2018) ....................................................................................................29

*Bolus v. Carnicella*,
   No. 15-cv-01062, 2020 WL 6531007 (M.D. Pa. Nov. 5, 2020) ...............................................27

*Bowles v. Nat'l Ass'n of Home Builders*,
   224 F.R.D. 246 (D.D.C. 2004) ..................................................................................................19

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) .....................................................................................................................5

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
   318 F. Supp. 3d 347 (D.D.C. 2018) ..........................................................................................14

*Castellani v. City of Atlantic City*,
   102 F. Supp. 3d 657 (D.N.J. 2015) ...........................................................................................30

*Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*,
   124 F.3d 1304 (D.C. Cir. 1997) ................................................................................................23

*Dixon v. City of Buffalo*,
   No. 19-cv-1678, 2023 WL 11819596 (W.D.N.Y. Jan. 19, 2023)..............................................27

*Doubleday v. Ruh*,
   149 F.R.D. 601 (E.D. Cal. 1993)....................................................................................21, 25, 27

*EFG BNK AG v. Lincoln Nat'l Life Ins. Co.*,
   593 F. Supp. 3d 225 (E.D. Pa. 2022) ........................................................................................20

*\*Elkins v. D.C.*,
   250 F.R.D. 20 (D.D.C. 2008).......................................................................................15, 18, 26

*Estate of Serna v. Cnty. of San Diego*,
   689 F. Supp. 3d 848 (S.D. Cal. 2023) .......................................................................................31

*Ewalt v. GateHouse Media Ohio Holding II, Inc.*,
  No. 2:19-cv-4262, 2020 WL 4782860 (S.D. Ohio Aug. 18, 2020)............................ 31

*FEC v. Christian Coal.*,
  179 F.R.D. 22 (D.D.C. 1998) .................................................................................. 20

*Freeman v. Giuliani*,
  Nos. 24-mc-00353, 24-cv-06563, 2024 WL 5054913 (S.D.N.Y. Dec. 10, 2024) ............... 14

*\*FTC v. Boehringer Ingelheim Pharms., Inc.*,
  778 F.3d 142 (D.C. Cir. 2015) ....................................... 20, 22, 23, 24, 25, 27

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ......................................................................................... 20, 24

*In re Baby Food Antitrust Litig.*,
  166 F.3d 112 (3d Cir. 1999) ................................................................................... 5

*In re John Doe Corp.*,
  675 F.2d 482 (2d Cir. 1982) .................................................................................. 23

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
  No. 21-cv-305, 2024 WL 4119133 (N.D. Ill. Sept. 9, 2024) .................................... 17

*In re Sealed Case*,
  676 F.2d 793 (D.C. Cir. 1982) .............................................................................. 15

*In re Steinhardt Partners, L.P.*,
  9 F.3d 230 (2d Cir. 1993).................................................................................... 16

*In re Vitamins Antitrust Litig.*,
  211 F.R.D. 1 (D.D.C. 2002) ........................................................................... 23, 26

*Joseph v. Las Vegas Metro Police Dep't*,
  No. 09-cv-00966, 2011 WL 846061 (D. Nev. Mar. 8, 2011) ................................... 21

*Jud. Watch, Inc. v. U.S. Dep't of Com.*,
  196 F.R.D. 1 (D.D.C. 2000) .................................................................................. 14

*Klein v. Jefferson Parish Sch. Bd.*,
  No. 00-cv-3401, 2003 WL 1873909 (E.D. La. Apr. 10, 2003) ................................ 20

*Labow v. U.S. Dep't of Just.*,
  831 F.3d 523 (D.C. Cir. 2016) .......................................................................... 29, 30

*Lawrence v. Suffolk Cnty.*,
  19-cv-2887, 2022 WL 855380 (E.D.N.Y. Mar. 23, 2022)...................................... 21

*Leopold v. U.S. Dep't of Just.*,
    487 F. Supp. 3d 1 (D.D.C. 2020) ................................................................. 17, 18

*Long v. Motion Picture Ass'n of Am.*,
    19-cv-2088 (CRC), 2021 WL 5446278 (D.D.C. Nov. 22, 2021) ............................ 19

*Moody v. IRS*,
    654 F.2d 795 (D.C. Cir. 1981) ................................................................. 27

*Moore v. Hartman*,
    102 F. Supp. 3d 35 (D.D.C. 2015) ................................................................. 30

*Myers v. Cunningham*,
    No. 18-cv-39, 2019 WL 3892865 (E.D. Tenn. Aug. 19, 2019) ............................ 21

*Ostrowski v. Holem*,
    No. 02-cv-50281, 2002 WL 31956039 (N.D. Ill. Jan. 21, 2002) ............................ 21

*Parrott v. Wilson*,
    707 F.2d 1262 (11th Cir. 1983) ................................................................. 27

*Pruco Life Ins. Co. v. Villarreal*,
    No. 17-cv-2795, 2020 WL 7263226 (S.D. Tex. Dec. 10, 2020) ............................ 28

*Schiller v. City of N.Y.*,
    No. 04-cv-7921, 2007 WL 136149 (S.D.N.Y. Jan. 19, 2007) ............................ 15, 16

*Schomburg v. N.Y.C. Police Dep't*,
    298 F.R.D. 138 (S.D.N.Y. 2014) ................................................................. 21

*Schultz v. Talley*,
    152 F.R.D. 181 (W.D. Mo. 1993) ................................................................. 21

*SEC v. Thrasher*,
    No. 92-cv-6987, 1995 WL 46681 (S.D.N.Y. Feb. 7, 1995) ................................ 23

*Stamps v. Town of Framingham*,
    38 F. Supp. 3d 134 (D. Mass. 2014) ................................................................. 21

*Stolt-Nielsen Transp. Grp. Ltd. v. United States*,
    534 F.3d 728 (D.C. Cir. 2008) ................................................................. 29

*The Navajo Nation v. Peabody Holding Co.*,
    209 F. Supp. 2d 269 (D.D.C. 2002) ................................................................. 15, 16

*The Navajo Nation v. Peabody Holding Co.*,
    255 F.R.D. 37 (D.D.C. 2009) ................................................................. 19

*Tri-State Hosp. Supply Corp. v. United States*,
    No. 00-cv-1463 (HHK) (JMF), 2005 WL 3447890 (D.D.C. Dec. 16, 2005) ......................... 27

*United States ex. rel. Landis v. Tailwind Sports Corp.*,
    303 F.R.D. 419 (D.D.C. 2014) .................................................................. 25, 26, 28

*United States SEC v. Welliver*,
    No. 11-cv-3076, 2012 WL 8015672 (D. Minn. Oct. 26, 2012) ............................... 16

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
    315 F.R.D. 103 (D.D.C. 2016) .................................................................. 15

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ................................................................ 20

*United States v. Cameron-Ehlen Grp., Inc.*,
    No. 13-cv-3003, 2019 WL 1453063 (D. Minn. Apr. 2, 2019) ............................... 26

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ................................................................... 27

*United States v. Cont'l Grp., Inc.*,
    603 F.2d 444 (3d Cir. 1979) ..................................................................... 5

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010) .............................................................. 15, 19

*United States v. Mass. Inst. of Tech.*,
    129 F.3d 681 (1st Cir. 1997) ................................................................... 15

*United States v. Paxson*,
    861 F.2d 730 (D.C. Cir. 1988) .............................................................. 21, 22

*United States v. Williams Cos.*,
    562 F.3d 387 (D.C. Cir. 2009) .............................................................. 15, 16

*US Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*,
    274 F.R.D. 28 (D.D.C. 2011) ................................................................... 19

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
    873 F.3d 185 (3d Cir. 2017) ..................................................................... 5

*Walls v. Vasselli*,
    No. 19-cv-06468, 2022 WL 1004248 (N.D. Ill. Apr. 4, 2022) ............................... 20

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007) ................................................................. 14

*Webb v. Hendricks Cnty. Sheriff's Off.*,
   No. 20-cv-03286, 2021 WL 3077925 (S.D. Ind. July 21, 2021) ............................................. 21

*Westinghouse Elec. Corp. v. Republic of Philippines*,
   951 F.2d 1414 (3d Cir. 1991) ................................................................................................ 15

*Williams & Connolly v. SEC*,
   662 F.3d 1240 (D.C. Cir. 2011) ...................................................................................... 16, 17

*Wright v. U.S. Dep't of Just.*,
   121 F. Supp. 3d 171 (D.D.C. 2015) ...................................................................................... 27

**Statutes and Rules**

15 U.S.C. § 1 ........................................................................................................................... 4

*Fed. R. Civ. P. 26 ............................................................................... 13, 19, 22, 24, 25

*Fed. R. Civ. P. 45 ............................................................................................... 1, 11, 14

Fed. R. Crim P. 6 .............................................................................................. 3, 11, 28, 29, 30

*Fed. R. Evid. 502 ......................................................................................... 16, 18, 19

**Other Authorities**

2007 Advisory Committee Notes to Fed. R. Evid. 502 ........................................................... 19

8 Wright & Miller, Fed. Prac. & Proc. § 2024 (3d ed. 2024) ..................................................... 21

## <u>INTRODUCTION</u>

Ara Aprahamian respectfully submits this motion to compel the U.S. Department of Justice to comply with his Rule 45 subpoenas, which seek critical impeachment evidence that he needs to challenge the testimony of cooperating witnesses in civil actions against him.

Mr. Aprahamian is a former employee of Taro Pharmaceuticals, a manufacturer of generic drugs. In 2020, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Mr. Aprahamian with violations of the Sherman Act during his employment at Taro. Based on information from several cooperating witnesses, the government alleged that Mr. Aprahamian had reached anticompetitive agreements with Taro's competitors to fix prices and allocate customers in the markets for various generic drugs.

In criminal discovery, the government initially produced memoranda of interviews with the cooperating witnesses that were largely consistent with the charges. Mr. Aprahamian, however, requested that the government produce additional notes and memoranda concerning the cooperators' testimony, including notes of attorney proffers and other communications with the witnesses' counsel. Mr. Aprahamian explained that these materials were essential because "[t]he information available to Mr. Aprahamian indicates that the testimony of key cooperating witnesses changed dramatically over the course of their interviews with the government, evidently as a result of threats or other inducements by the government."[1] After repeated demands by Mr. Aprahamian, the government made additional productions, which are well-documented by public filings in the criminal case. Shortly after these productions, the government moved to dismiss the indictment against Mr. Aprahamian with prejudice. The presiding court granted the motion, and Mr. Aprahamian no longer faces criminal charges. The

---

[1] Letter at 3, *United States v. Aprahamian*, No. 20-cr-64, Dkt. 57 (E.D. Pa. Mar. 20, 2023)).

protective order in the criminal case severely restricts Mr. Aprahamian's ability to describe the contents of the materials the government produced. The government, however, has never disputed the critical significance of those materials to the allegations against Mr. Aprahamian.

Despite the dismissal of his indictment, Mr. Aprahamian continues to face civil lawsuits based on the testimony of the government's cooperating witnesses. Before the government dropped its case, dozens of State attorneys general and private plaintiffs sued Mr. Aprahamian, alleging the same conduct that the government charged in its criminal case. These plaintiffs have secured cooperation from some of the same witnesses who cooperated with the government's criminal investigation. The cases are reaching critical stages, as the plaintiffs are expected to move for summary judgment against Mr. Aprahamian in a coming wave of motions in July 2025, relying primarily on the cooperator testimony. As a result, the evidence that Mr. Aprahamian obtained in the criminal case remains central to his ability to put on a defense. The civil claims cannot fairly be adjudicated without this evidence, and its absence from the record will result in serious prejudice to Mr. Aprahamian.

Mr. Aprahamian no longer has copies of this evidence. Once the indictment was dismissed, the protective order in the criminal case required him to destroy his copies of the criminal discovery materials or return them to the government. As a result, Mr. Aprahamian served a *Touhy* request and subpoenas on the government to obtain new copies of these materials. In response, the government produced the interview memoranda, which largely favored the government's version of events, but refused to produce any notes whatsoever. The government asserts that the notes are protected under the work-product doctrine and therefore immune from production.

This objection is meritless and should be overruled. The government waived any work-product protection twice over—first when it produced the materials in criminal discovery, and also when it selectively produced a subset of materials in response to the subpoenas. In addition, any work-product protection has evaporated because the rationales for such protection no longer apply to the notes. To the extent any residual protection remains, the notes are nevertheless discoverable because Mr. Aprahamian has made a powerful showing that is more than sufficient to override any protection. He has a compelling need for the notes to defend against the claims in the civil proceedings and avoid the serious prejudice of summary judgment. He has no other way to obtain that evidence or its substantial equivalent.

The government has also raised a more limited objection on grounds of grand-jury secrecy under Federal Rule of Criminal Procedure 6(e) as its basis for redacting text from many of the interview memoranda. This is flatly contrary to the position the government took in the criminal case, in which it produced the unredacted memoranda and notes without any court authorization under Rule 6(e). That is because these materials are not, in fact, subject to Rule 6(e) under clear D.C. Circuit law.

This Court should therefore grant Mr. Aprahamian's motion and compel the government to produce the materials it has withheld. To the extent the Court requires further information regarding the content of the notes, Mr. Aprahamian respectfully requests that it conduct an *in camera* review or permit him to supplement this motion once he is authorized to do so. In the closed criminal case, Mr. Aprahamian has filed a motion to modify the criminal protective order so that he can describe the contents of the discovery materials, under seal, to this Court. The government has opposed that motion, effectively arguing that Mr. Aprahamian should not be allowed to fully apprise this Court of the relevance and significance of the materials, even under

seal.  The motion was fully briefed in January 2025, and if it is granted, Mr. Aprahamian submits that he will be able to provide an even more compelling showing of need.

## BACKGROUND

### A.    The Government Dropped Its Criminal Case Against Mr. Aprahamian, Which Relied Heavily On The Testimony Of Cooperating Witnesses

On February 4, 2020, Mr. Aprahamian was indicted in the Eastern District of Pennsylvania for alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.  (*See* Indictment, *United States v. Aprahamian*, No. 20-cr-64 ("*Aprahamian*"), Dkt. 1 (E.D. Pa. Feb. 4, 2020)).  The indictment alleged that while Mr. Aprahamian worked at Taro Pharmaceuticals from 2013 to 2015, he engaged in conspiracies with Taro's competitors to fix prices and allocate customers in the markets for various generic drugs.

The indictment's allegations relied heavily on information provided by three cooperating witnesses designated "CW-1," "CW-2," and "CW-3," alleged to be executives and employees of a competing pharmaceutical company.  (*Id.* ¶¶ 13-15).  Mr. Aprahamian subsequently learned that these cooperating witnesses were ███████████████████████████████████, who were formerly employed by ███████████.  According to the indictment, Aprahamian and ██████ had telephone conversations about generic drug pricing and customers, and ██████ allegedly shared what Aprahamian told him with ████████████.  The alleged result was that when one competitor raised its prices, the other would follow, and when one competitor entered the market for a drug, the other would give up market share (*i.e.*, customers) to the new entrant.  The indictment alleged that this constituted an antitrust conspiracy between Taro and ██████, as well as Aprahamian, ████████████████████.  (*Id.* ¶¶ 21-28).

All three witnesses received benefits in exchange for their cooperation.  ██████████████ entered into non-prosecution agreements with the government.  ██████ pled guilty to a Sherman

4

Act violation pursuant to a plea agreement with the government.  (*See* Transcript of Hearing at

11, *United States v.* ███████████████████████).  In recognition of

his cooperation, ██████ ultimately received a sentence that did not include any prison time.

      The government relied heavily on information from cooperating witnesses because it

faced a stringent legal standard.  Section 1 of the Sherman Act "applies only when there is *an*

*agreement* to restrain trade."  *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185,

191 (3d Cir. 2017).  Where, as in the case of generic drugs, markets are dominated by a few

firms ("oligopolistic"), there must be proof of "an explicit, manifest agreement," with

"assurances of common action," in order to avoid punishing the parallel behavior that one would

normally expect in such a market.  *Id.* at 193 & n.3; *accord, e.g.*, *Brooke Grp. Ltd. v. Brown &*

*Williamson Tobacco Corp.*, 509 U.S. 209, 227, 229 (1993) (requiring proof of "express

agreement," not just "tacit collusion").  The government could not carry this burden merely by

showing that the competitors "communicat[ed]" about prices, *In re Baby Food Antitrust Litig.*,

166 F.3d 112, 126 (3d Cir. 1999), or even that they agreed to "exchange" price information,

*United States v. Cont'l Grp., Inc.*, 603 F.2d 444, 462 (3d Cir. 1979).  The government needed to

prove an "agreement to fix prices" or allocate customers, *id.*, which would have been

extraordinarily difficult without cooperator testimony.

      In criminal discovery, the government produced the memoranda of its witness interviews,

which suggested it had the testimony it needed.  The cooperating witnesses apparently endorsed

the government's theory that they had engaged in an illegal conspiracy with Mr. Aprahamian.

However, as Mr. Aprahamian reported in a letter to the court on March 20, 2023:  "[I]nformation

available to Mr. Aprahamian [also] indicate[d] that the testimony of [the] cooperating witnesses

[had] changed dramatically over the course of their interviews with the government, evidently as

a result of threats or other inducements by the government." (*Aprahamian* Dkt. 57 at 3). The discovery produced by the government up to that point did "not identify the statements the government made to these witnesses or their counsel, nor d[id] it sufficiently disclose the changes in their testimony." (*Id.*). As a result, Mr. Aprahamian "repeatedly requested" further discovery from the government, including the underlying notes of the interviews, as well as the government's notes and memoranda concerning proffers and other communications with the cooperating witnesses' counsel. (*Id.*).

The protective order in the criminal case limits Mr. Aprahamian ability to describe the contents of the materials he received in discovery after that point. But filings of the public docket provide some indication of their significance:

- As reported in a letter filed by Mr. Aprahamian on September 18, 2023, "the government made a production of over 1,000 pages of discovery materials to defense counsel" on "Friday, September 15, after 5:00 p.m." (*Aprahamian* Dkt. 73). To give Mr. Aprahamian an adequate opportunity to review the new material, the court extended his deadline for filing dispositive motions by several weeks. (*Aprahamian* Dkt. 74).

- On October 6, 2023, at the government's request, the court extended the motion deadline by another two weeks. (*Aprahamian* Dkts. 86-87).

- On October 20, 2023, Mr. Aprahamian reported that "[t]he government ha[d] recently made several productions of discovery materials to Mr. Aprahamian, which ha[d] affected the motions that Mr. Aprahamian was preparing." (*Aprahamian* Dkt. 91). He further stated that "[t]he government ha[d] advised … that its review [wa]s ongoing," and that "he may receive additional discovery materials that further impact his anticipated motions." (*Id.*). "[T]he parties agree[d] that a three-week extension" of the motion

deadline was "necessary in light of the government's ongoing review." (*Id.*). The court granted the requested extension. (*Aprahamian* Dkt. 92).

- On November 10, 2023, Mr. Aprahamian reported that "[t]he government ha[d] advised … that it [wa]s continuing its review and anticipate[d] making another production of discovery material" after the then-current motion deadline. (*Aprahamian* Dkt. 93). The court granted another three-week extension. (*Aprahamian* Dkt. 94).

Less than a week later, on November 16, 2023, the government filed an unopposed motion to dismiss the indictment against Mr. Aprahamian with prejudice. (*Aprahamian* Dkt. 95). In its motion, the government noted that "counsel for Defendant … [had] confirmed that Defendant and Defendant's counsel w[ould] comply with the requirements of the Protective Order, including Paragraph 11, upon entry of this Court's order of dismissal." (*Id.* at 1-2). The government's proposed order dismissing the indictment specifically required "the parties [to] fully and promptly comply with the provisions of the Protective Order, including Paragraph 11." (*Id.* at 3). Paragraph 11 of the protective order required Mr. Aprahamian and his counsel to destroy all criminal discovery materials or return them to the government at the conclusion of the prosecution. (*Aprahamian* Dkt. 35 ¶ 11).

At the court's request, the government filed a letter under seal to further explain its decision to dismiss the case. (*Aprahamian* Dkt. 97; *see also Aprahamian* Dkts. 96, 100 (sealing the letter)). On November 29, 2023, the court granted the government's motion and ordered the dismissal of all charges with prejudice. (*Aprahamian* Dkt. 98). To comply with the criminal protective order and the dismissal order, Mr. Aprahamian and his counsel destroyed their copies of the criminal discovery materials or returned them to the government. (*See id.*; *Aprahamian* Dkt. 35 ¶ 11).

**B.    Mr. Aprahamian Needs To Challenge Testimony From The Same Witnesses In The Civil Proceedings Against Him**

Although the indictment was dismissed, Mr. Aprahamian remains a defendant in antitrust enforcement actions brought by State attorneys general, putative class actions, and actions filed by other private plaintiffs.  The federal civil actions were consolidated into a multidistrict litigation in the Eastern District of Pennsylvania named *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-md-2724 (E.D. Pa.) ("*MDL*").  While initially part of the MDL, the State attorney general actions have since been remanded to the District of Connecticut.  *See State of Conn. et al. v. Teva Pharms. USA, Inc. et al.*, No. 19-cv-710 (D. Conn.) ("*Teva*"); *State of Conn. et al. v. Sandoz, Inc. et al.*, No. 20-cv-802 (D. Conn.) ("*Sandoz*").

The civil complaints against Mr. Aprahamian allege conduct similar or identical to that charged in the indictment.  They also rely on much of the same cooperator testimony.  The State attorneys general secured the cooperation of two of the witnesses identified in the indictment, ████████████, who are identified in the States' complaints as "CW-1" and "CW-3."  (*See, e.g., Teva* Dkt. 186 ¶ 68; *Sandoz* Dkt. 196 ¶¶ 11-12, 75-76).  Like the indictment, the complaints purport to use the cooperators' testimony to describe Aprahamian's telephone calls in furtherance of the alleged conspiracies.[2]  Both cooperators testified at their depositions that they entered into anticompetitive agreements with Aprahamian.  ████████, who pled guilty to reaching

---

[2] *E.g., Teva* Dkt. 186 ¶ 786 ("On April 4, 2024, … Defendant Aprahamian spoke to CW-3 … for nineteen (19) minutes.  They discussed the Teva [price] increase and the fact that Taro would follow."), ¶ 1082 ("Defendant Aprahamian of Taro often spoke with CW-3 of Sandoz about coordinating price increases between the two companies.  Almost invariably, he would conclude the conversations with phrases like 'don't take my … customers'…."); *Sandoz* Dkt. 196 ¶ 565 ("CW-3 and Aprahamian exchanged at least two hundred and thirty-five (235) phone calls between April 2012 and August 2016"), ¶ 671 ("On the morning of April 15, 2013, Aprahamian called CW-3 and they spoke for eighteen (18) minutes.  A few minutes after hanging up, CW-3 called Aprahamian back.  The call lasted one (1) minute.  During these calls, CW-3 told Aprahamian that Sandoz would be entering the market for [a generic product] shortly.").

anticompetitive agreements that involved Aprahamian, has filed a declaration that purports to reaffirm those admissions and did so at his deposition. As a result, Mr. Aprahamian has a critical need to challenge the credibility of these witnesses, and he will be severely prejudiced if he cannot do so.

Mr. Aprahamian's need is not just substantial, but urgent. The civil actions against him are approaching pivotal stages. The States have made clear that they plan to move for summary judgment against Mr. Aprahamian, based primarily on cooperating witness testimony, in a coming wave of motions due July 9, 2025. Not long ago, the States served Mr. Aprahamian with requests for admission that seek to establish elements of their case. In their primary action, the States seek to hold Mr. Aprahamian jointly and severally liable for alleged conspiracies involving 43 different drugs. (Amended Complaint, *Derm* Dkt. 192, ¶¶ 1733-40). Moreover, at a recent antitrust conference, the lead attorney for the States announced that "state enforcers will seriously consider pursuing stringent relief should they prevail … because the Department of Justice did not secure prison sentences for any individuals it charged." (Declaration of Fabien M. Thayamballi, Ex. A at 1). The State attorney said: "We have to start thinking about … whether we can ban them from working in the [pharmaceutical] industry or about other things that could actually deter the conduct." (*Id.*) Referring to Mr. Aprahamian by name, the State attorney "added" that "[b]ans for executives … including Taro Pharmaceuticals executive Ara Aprahamian … could have a powerful deterrent effect." (*Id.*). Little could be more useful to Mr. Aprahamian in opposing summary judgment, and avoiding the draconian remedies the States apparently plan to seek, than evidence that undermines the testimony of the cooperating witnesses against him.

9

**C.    The Government Refuses To Produce Its Notes On Work-Product Grounds, But Has Produced Interview Memoranda In Redacted Form**

In August 2024,[3] pursuant to the applicable regulations, Mr. Aprahamian served a *Touhy* request on the government seeking the notes and interview memoranda concerning the cooperating witnesses that he had previously received in criminal discovery.  In furtherance of this request, Mr. Aprahamian's counsel had discussions over the ensuing months with counsel for the Department of Justice's Antitrust Division.  The government repeatedly advised that it planned to provide a formal response by letter, and repeatedly pushed back the expected date by which it would provide that response.  Finally, in a call on October 30, 2024, the government advised Mr. Aprahamian for the very first time of its position that his *Touhy* request was not ripe because he had yet to serve a subpoena.

On January 10, 2025, Mr. Aprahamian served subpoenas duces tecum on the government to obtain these materials for use in the civil cases.  (Thayamballi Decl. Ex. B (*Teva* subpoena), Ex. C (*Sandoz* subpoena) (collectively, the "Subpoenas")).[4]  Like Mr. Aprahamian's *Touhy* request, the Subpoenas seek production of "[a]ll interview memoranda, notes of attorney proffers, and other notes and memoranda concerning the individuals designated CW-1, CW-2, and CW-3 in *United States v. Aprahamian*, No. 20-cr-64 (E.D. Pa.), that were previously produced in that action."  (*Id.*).  Thus, Mr. Aprahamian does not seek any materials that he has not already seen.

---

[3] The government had previously obtained a protective order in the civil actions barring discovery into its criminal investigation, including discovery into what the cooperators told the government.  (*See MDL* Dkt. 2215 at 5).  That protective order was not rescinded until mid-2024.  (*See MDL* Dkt. 3002; *Sandoz* Dkt. 296; *Teva* Dkt. 323).

[4] Mr. Aprahamian also served an identical subpoena for the MDL.  This motion does not concern that subpoena, as the MDL court has established separate procedures for MDL subpoenas.

On January 24, 2025, the government served a written response to the Subpoenas and *Touhy* request.  (Thayamballi Decl. Ex. D ("*Touhy* Resp.")).  The government agreed to produce a subset of the criminal discovery materials, namely two interview memoranda for █████ prepared by the FBI and twenty-eight interview memoranda for ██████████████ prepared by the U.S. Postal Service Office of the Inspector General.

The government objects to production of the remaining subpoenaed materials, including the notes of its communications with the cooperators' attorneys, on grounds of work-product protection.  The government has not provided a privilege log or other disclosure that clearly identifies the documents withheld, as required by Federal Rule of Civil Procedure 45(e)(2)(A)(ii).  The government has made clear, however, both orally and in its letter, that it is withholding all of its notes on this ground.  To the extent the government has withheld other documents, they are of a similar nature, and we will refer to them collectively as "notes."

The government has also redacted information from the interview memoranda based on a purported concern with grand-jury secrecy.  (*Touhy* Resp. 1 (discussing "redactions of … information that falls under Criminal Rule 6(e)")).  It appears the government has redacted ██ ██████████████████████████████████████████████████.  (*See generally* Thayamballi Decl. Ex. E).  The government does not claim to have withheld any documents in their entirety on this ground.  In any event, none of the materials Mr. Aprahamian seeks are subject to the rule of grand-jury secrecy.  (*See* Point V *infra*).

## D.     The Government Is Obstructing Mr. Aprahamian's Ability To Litigate This Motion

Shortly after serving his Subpoenas, on January 13, 2025, Mr. Aprahamian filed a motion to modify the protective order in the criminal case.  (*Aprahamian* Dkt. 106 (under seal)).  Mr. Aprahamian anticipated that in litigating a motion to quash or enforce the Subpoenas, he would

need to describe the criminal discovery materials to this Court and explain why he needs them. The criminal protective order is a significant obstacle, as it forbids Mr. Aprahamian from "disclos[ing]" or "us[ing]" information from the criminal discovery materials in any "civil proceedings." (*Aprahamian* Dkt. 35 ¶¶ 3, 11). Mr. Aprahamian therefore sought a limited modification of the criminal protective order that would permit him to describe the criminal discovery materials, under seal, to the courts presiding over his civil antitrust cases and any related discovery proceedings (such as subpoena litigation before this Court).

Because Mr. Aprahamian's motion described the criminal discovery materials, the government insisted that the motion be filed under seal. (*Aprahamian* Dkts. 105, 110, 112, 116). Mr. Aprahamian provided a detailed description of the materials (to the extent he could do so without having copies) to demonstrate that there were compelling reasons to modify the protective order. Mr. Aprahamian asked the court to review the materials *in camera* if the government disputed his characterization of their contents.

The government opposed Mr. Aprahamian's motion to modify the protective order. (*Aprahamian* Dkt. 109). Notably, the government did not dispute Mr. Aprahamian's description of the criminal discovery materials or their importance to his civil proceedings. Nor did it explain why filing any description of the materials with this Court *under seal* would be inadequate to protect the government's interests. Instead, the government advanced generic arguments about the need to "ke[ep] civil and criminal discovery separate." (*Id.* at 8). The government also contended that "Aprahamian has not established that he needs to describe the contents of the criminal discovery documents in support of the anticipated discovery dispute in the civil cases." (*Id.*). It assured the court that "[c]ivil discovery does not require a requestor to

describe the detailed contents of requested documents when explaining to courts why the requestor is entitled to the production of such material." (*Id.* at 8-9).

Just three days earlier, however, the government had told Mr. Aprahamian that he could not override its work-product objection to producing the withheld materials because "there has been no showing of substantial need" for that evidence. (*Touhy* Resp. 2 (citing Fed. R. Civ. P. 26(b)(3)(A)(ii))). In other words, at the same time the government was insisting that this Court would need to evaluate the importance of the evidence, it was also seeking to prevent Mr. Aprahamian from explaining why the evidence is important.

Mr. Aprahamian's motion to modify the protective order was fully briefed on January 31, 2025. (*Aprahamian* Dkt. 113). On March 12, 2025, Mr. Aprahamian filed a letter informing the court that he had prepared a motion to compel compliance with his subpoenas, which described the contents and significance of the subpoenaed documents in order to overcome the government's objections to production. (*Aprahamian* Dkt. 118). He explained that he could not file this motion without a modification of the criminal protective order, and he attached a copy of the motion as an exhibit, under seal, to provide the court and the government with a concrete example of why he sought the modification. (*Aprahamian* Dkts. 118, 119). He requested that the court decide his motion to modify the protective order at its earliest convenience, so that he could file his motion to compel and obtain the evidence he needed in advance of summary judgment in the civil actions. (*Id.* at 2).

At the time of this filing, the *Aprahamian* court has not yet ruled. As a result, Mr. Aprahamian has filed the present version of his motion to compel, which avoids describing the contents of the withheld discovery materials. If the *Aprahamian* court modifies the protective

order, Mr. Aprahamian respectfully requests leave to supplement this motion to compel with the information the government has, thus far, forbidden him from providing to this Court.

## **LEGAL STANDARD**

A party's "challenge to an agency's refusal to comply with a Rule 45 subpoena should proceed … as a Rule 45 motion to compel," and "Rule 45 also supplies the standards under which district courts assess agency objections to a subpoena." *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007).[5]  Under Rule 45, any "non-party served with a subpoena requesting the production of documents must serve any objection in writing to the requesting party's counsel within 14 days of service of the subpoena," and "[t]he failure to [timely] serve written objections … typically constitutes a waiver of such objections." *Alexander v. F.B.I.*, 186 F.R.D. 21, 33-34 (D.D.C. 1998) (citing rule now codified as Fed. R. Civ. P. 45(d)(2)(B)); *accord, e.g.*, *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 196 F.R.D. 1, 2 (D.D.C. 2000); *Freeman v. Giuliani*, Nos. 24-mc-00353, 24-cv-06563, 2024 WL 5054913, at *3 (S.D.N.Y. Dec. 10, 2024).  In its objections, the non-party must "expressly make [any] claim" of "privilege[]" and provide sufficient information to "enable the parties to assess the claim."  Fed. R. Civ. P. 45(e)(2)(A).

Here, the work-product privilege and grand-jury-secrecy rule are the only objections squarely raised in the government's response to Mr. Aprahamian's Subpoenas, so the government has waived all other potential objections.  The "burden lies on the party resisting discovery to show that the documents requested are … privileged."  *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018).

---

[5] Unless otherwise noted, quotations omit internal quotation marks, footnotes, and marks in the original source indicating alterations.

14

## ARGUMENT

**I.    The Government Waived Work-Product Protection By Producing The Materials In Criminal Discovery**

The government cannot invoke the work-product doctrine because it produced the subpoenaed materials to Mr. Aprahamian during his criminal prosecution.  The "disclosure of attorney work product to an adversary … waives work-product protection for that material." *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010); *accord United States v. Williams Cos.*, 562 F.3d 387, 394 (D.C. Cir. 2009) (same); *In re Sealed Case*, 676 F.2d 793, 817 (D.C. Cir. 1982) (waiver results from disclosure "to anyone without common interests in developing legal theories and analyses of documents"); *Elkins v. D.C.*, 250 F.R.D. 20, 25, 27 (D.D.C. 2008) (government waived work-product protection over email concerning "draft search warrant affidavit" because it "was previously disclosed to [the] Plaintiffs").  Indeed, where a party has disclosed the alleged work product to "the very [party] with whom [it] anticipated litigation," a "clearer case for waiver can scarcely be made."  *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 315 F.R.D. 103, 114 (D.D.C. 2016).  Notably, the government has used this very waiver rule to compel the production of other parties' alleged work product.  *See, e.g.*, *id.*; *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997).

Contrary to the government's suggestion (*Touhy* Resp. 3-4), production to an adversary waives work-product protection even if there is a protective order restricting further disclosure. *See Schiller v. City of N.Y.*, No. 04-cv-7921, 2007 WL 136149, at *5 n.5 (S.D.N.Y. Jan. 19, 2007) ("disclosure to an adversary constitutes waiver even where" the production is made in "reliance on [a] Protective Order"); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1419, 1429 (3d Cir. 1991) (finding waiver despite "confidentiality agreement … memorialized in a stipulated court order"); *The Navajo Nation v. Peabody Holding Co. (Navajo*

*Nation I)*, 209 F. Supp. 2d 269, 286-87 (D.D.C. 2002) (same), *aff'd*, 64 F. App'x 783 (D.C. Cir. 2003).  This follows from the waiver rule:  the protective order does not alter the fact that the disclosure is "inconsistent with the maintenance of secrecy from the disclosing party's adversary."  *Williams Cos.*, 562 F.3d at 394; *cf. In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears.").

Moreover, the terms of the protective order in Mr. Aprahamian's criminal case undermine the government's argument.  That blanket order required Mr. Aprahamian to maintain the confidentiality of discovery materials in certain respects, but it also contemplated that he might use those materials at a hearing or trial, or produce them in discovery in another case.  (*See Aprahamian* Dkt. 35 ¶¶ 7-8).  The government chose not to seek an order stating that the work-product "privilege or protection is not waived by disclosure connected with the litigation pending before the court."  Fed. R. Evid. 502(d).  The government's conduct is, therefore, entirely inconsistent with the assertion of any privilege.  *See Schiller*, 2007 WL 136149, at *5 n.5 (finding waiver where "the Protective Order d[id] not include a non-waiver agreement which might have allowed the parties to preserve claims of privilege"); *United States SEC v. Welliver*, No. 11-cv-3076, 2012 WL 8015672, at *6 (D. Minn. Oct. 26, 2012) (finding waiver where party had "failed to" seek a "Rule 502(d) order").

None of the cases cited by the government suggests that it can avoid waiver here.  (*See Touhy* Resp. 4).  In *Williams & Connolly v. SEC*, 662 F.3d 1240 (D.C. Cir. 2011), the Court held that government "notes *not turned over* in [the course of a] criminal trial still remain … work product."  *Id.* at 1244 (emphasis added).  The Court did not address whether the notes that *were* produced in the criminal case remained work product because the requesting party still had

copies and therefore did not need relief under FOIA.  *Id.* at 1243-44.  In *Leopold v. United States Department of Justice*, 487 F. Supp. 3d 1 (D.D.C. 2020), the court merely held that because "disclosure under the FOIA … turns on whether a document would usually be discoverable in a civil case," it does not matter whether interview memoranda are usually produced in criminal cases.  *Id.* at 12-13.  *Leopold* did *not* hold that memoranda *actually produced* in a criminal case remain work product.  The only "waiver" issue the court addressed had nothing to do with that issue.  *Id.* at 13-14.[6]  Finally, *In re Outpatient Medical Center Employee Antitrust Litigation*, No. 21-cv-305, 2024 WL 4119133 (N.D. Ill. Sept. 9, 2024), is inapposite because the government did not claim work-product protection.  Rather, the court found the plaintiffs had provided no "basis" to believe criminal discovery materials were "relevant or proportional to the needs of the [civil] case."  *Id.* at *8.  The court also held that the government's production of criminal discovery had not waived its law-enforcement privilege as to the plaintiffs, but that was because, unlike here, there was an "express agreement that the disclosure 'would not constitute a waiver.'"  *Id.*

The government's waiver of work-product protection is, by itself, a sufficient reason to compel compliance with Mr. Aprahamian's Subpoenas.

## II.    The Government Also Waived Work-Product Protection By Selectively Producing Materials In Response To The Subpoenas

There is also a second, independent reason to find that the government has waived work-product protection over the materials it refuses to produce:  The government's response to Mr. Aprahamian's Subpoenas is an impermissible selective waiver.  The government often claims work-product protection over interview memoranda prepared during criminal investigations.

---

[6] The summary of *Leopold* in the government's parenthetical (*Touhy* Resp. 4) can be traced to a misquotation of *Williams & Connolly*, which stated:  "The decision of the Justice Department to disclose the eleven sets of notes in the criminal proceeding has no bearing on whether FOIA permits the SEC to withhold *the remaining 103 documents*."  662 F.3d at 1244 (emphasis added).

Indeed, in one of the cases cited in its *Touhy* response, the government successfully argued that FBI interview memoranda were protected work product. *See Leopold*, 487 F. Supp. 3d at 11-12. But not here. While the government asserts work-product protection over the notes of its communications with the cooperators and their counsel, it has chosen to produce the memoranda it prepared concerning its interviews with those witnesses. The government cannot selectively assert the work-product doctrine in this manner.

Under certain circumstances, "[i]f work product is disclosed, such disclosure waives the privilege for those documents that are disclosed and as to other documents relating to the same subject matter." *Elkins*, 250 F.R.D. at 26. The "waiver extends to an undisclosed communication or information … only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). That is the case here. The government produced the memoranda intentionally, not by accident. The disclosed memoranda and undisclosed notes both concern the same subject matter: the expected testimony of potential cooperating witnesses during the government's criminal investigation. And they ought, in fairness, to be considered together—in fact, it would be profoundly misleading to the court on summary judgment or the jury at trial to consider the memoranda in isolation, and it would result in serious prejudice to Mr. Aprahamian and his co-defendants.

The interview memoranda do *not* tell the full story. They contain statements from cooperating witnesses that are largely consistent with the charges the government brought against Mr. Aprahamian and others. But the materials that the government has withheld, including notes of communications with the witnesses' attorneys, provide critical additional context. The criminal protective order prevents Mr. Aprahamian from describing the contents of

those materials.  Suffice it to say, however, that it was the government's production of certain materials beginning in September 2023—not the production of interview memoranda years earlier—that led the government to dismiss the indictment.  If the government disputes this (which it has not done thus far), Mr. Aprahamian respectfully submits that it would be necessary and appropriate for this Court to conduct an *in camera* review.  *See Deloitte*, 610 F.3d at 138-39.

The government's cherry-picked production will result in the sort of "selective and misleading presentation of evidence" that Rule 502(a) is designed to avoid.  2007 Advisory Committee Notes to Fed. R. Evid. 502.  This Court should therefore join the many others in this District that have found a subject-matter waiver of work-product protection to avoid unfairness to the party seeking discovery.  *See, e.g.*, *US Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*, 274 F.R.D. 28, 32-33 (D.D.C. 2011) (compelling deposition testimony over work-product objection to "provide an important context for proper understanding of the privileged materials" that were disclosed); *The Navajo Nation v. Peabody Holding Co. (Navajo Nation II)*, 255 F.R.D. 37, 47-50 (D.D.C. 2009) (compelling production of alleged work product to ensure "a complete picture of the facts in the disclosed documents" and prevent the responding party from "manipulat[ing] the truth by selectively withholding the most prejudicial documents"); *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 259 (D.D.C. 2004) (compelling production of alleged work product so that "the evidence in the record will not reflect only one side or part of privileged communications"); *Long v. Motion Picture Ass'n of Am.*, No. 19-cv-2088 (CRC), 2021 WL 5446278, at *6-7 (D.D.C. Nov. 22, 2021) (same).

## III.    Work-Product Protection Is Unavailable, Or At Least Extraordinarily Weak, Because The Rationales Behind The Privilege Do Not Apply Here

There are serious reasons to doubt the government's ability to invoke the work-product doctrine in the first place, regardless of waiver.  The work-product protection in "Rule 26(b)(3)

is phrased only in terms of the parties" and does not clearly extend to "materials prepared by or for a non-party for separate litigation." *FEC v. Christian Coal.*, 179 F.R.D. 22, 24 (D.D.C. 1998). Where courts apply the work-product doctrine to "non-party discovery," they do so "based on the policy concerns underlying the doctrine." *EFG BNK AG v. Lincoln Nat'l Life Ins. Co.*, 593 F. Supp. 3d 225, 229 (E.D. Pa. 2022). Those concerns are absent here.

"The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). Here, however, the government has no need to safeguard the "[p]roper preparation of a … case," or to prevent undue "intrusion" or "interference" with pending litigation, given that all charges brought as a result of its investigation are resolved, including the charges against Mr. Aprahamian. *Hickman*, 329 U.S. at 510-11. Nor is there any concern about one litigant "freeload[ing]" off another, since the withheld notes are unique information about the government's investigation and cooperating witnesses, which Mr. Aprahamian cannot recreate or otherwise obtain. *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 156 (D.C. Cir. 2015).

Citing similar reasons, many courts have held that "work product protections are not available when a [non-party] prosecutor … objects to discovery of purported work product by a litigant in a related civil lawsuit" brought after the investigation or prosecution concludes. *Walls v. Vasselli*, No. 19-cv-06468, 2022 WL 1004248, at *2-3 (N.D. Ill. Apr. 4, 2022) (overruling work-product objection to production of prosecutor's notes); *accord, e.g.*, *Klein v. Jefferson Parish Sch. Bd.*, No. 00-cv-3401, 2003 WL 1873909, at *3-4 (E.D. La. Apr. 10, 2003) (enforcing subpoena for prosecutor's notes because "the underlying criminal case has been closed" and

there was no danger of a "less diligent attorney raiding the file of a previously diligent attorney"); *Lawrence v. Suffolk Cnty.*, No. 19-cv-2887, 2022 WL 855380, at *2-3, *5-8 (E.D.N.Y. Mar. 23, 2022) (compelling prosecutors to produce documents and testimony for same reasons); *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 143-46 (D. Mass. 2014) (enforcing subpoena for police officer's notes for same reasons); *Doubleday v. Ruh*, 149 F.R.D. 601, 605-07 (E.D. Cal. 1993) (overruling work-product objection to production of prosecution file for similar reasons).[7]  Of course, that is precisely the posture here.

The government is mistaken to rely on *United States v. Paxson*, 861 F.2d 730 (D.C. Cir. 1988), to defend its assertion of work-product protection.  (*Touhy* Resp. 3).  *Paxson* held that work-product protection prevented a criminal defendant from obtaining documents from a cooperating witness during an *ongoing* criminal investigation, when disclosure might have implicated policy concerns absent from the above-cited cases.  *Id.* at 735-36.

Here, by contrast, the government can no longer invoke the work-product doctrine to protect the notes it has withheld.  To the extent those materials retain any protection, it would be extraordinarily weak given the absence of any strong policy justification for its application.  *Cf.* 8 Wright & Miller, Fed. Prac. & Proc. § 2024 (3d ed. 2024) ("[T]he court can hold that the material is work product … but view tolerantly the showing necessary to overcome the work product immunity.").

---

[7] *See also, e.g.*, *Webb v. Hendricks Cnty. Sheriff's Off.*, No. 20-cv-03286, 2021 WL 3077925, at *3 (S.D. Ind. July 21, 2021); *Myers v. Cunningham*, No. 18-cv-39, 2019 WL 3892865, at *3-4 (E.D. Tenn. Aug. 19, 2019); *Schomburg v. N.Y.C. Police Dep't*, 298 F.R.D. 138, 142-43 (S.D.N.Y. 2014); *Joseph v. Las Vegas Metro Police Dep't*, No. 09-cv-00966, 2011 WL 846061, at *1-2 (D. Nev. Mar. 8, 2011); *Abdell v. City of New York*, No. 05-cv-8453, 2006 WL 2664313, at *2-6 (S.D.N.Y. Sept. 14, 2006); *Ostrowski v. Holem*, No. 02-cv-50281, 2002 WL 31956039, at *3-4 (N.D. Ill. Jan. 21, 2002); *Schultz v. Talley*, 152 F.R.D. 181, 184-85 (W.D. Mo. 1993).

IV.     **Mr. Aprahamian's Need For The Materials Overrides Any Work-Product Protection**

A.     **At Most, The Materials Are Fact Work Product, Not Opinion Work Product**

If the government can invoke work-product protection at all, it is only the lesser protection applicable to "*fact* work product," rather than the stronger protection applicable to "*opinion* work product, which reveals 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" *Boehringer*, 778 F.3d at 151 (quoting Fed. R. Civ. P. 26(b)(3)(B)).

The subpoenaed notes are factual descriptions of proffers and other communications. They quote, paraphrase, or otherwise document statements made by the parties involved. They do not contain the government attorneys' annotations, analysis, or other commentary. *Cf. Paxson*, 861 F.2d at 735 (upholding work-product protection based on "unchallenged representation" that subpoenaed notes "contained 'assessments, thought processes, analyses and strategy of counsel,' and reflected [counsel's] judgment on how best to advise and protect the interest of his client"). Thus, if the notes qualify as work product, they are factual in nature.

The government's assertion that the notes are opinion work product (*Touhy* Resp. 3) is meritless and cannot be reconciled with its prior conduct. The government *produced these same notes* to Mr. Aprahamian in his criminal case. It plainly did not believe that the notes contained mental impressions or legal theories. If they did, the government would have redacted the offending portions or produced the underlying information in some other form.

It also bears emphasis that the government produced interview memoranda in response to the Subpoenas, including memoranda of ██████████████████████████████ ██████████████████████████. (*See, e.g.*, Thayamballi Decl. Ex. E at ████████-

USPS-REDACTED-00000191 – 199).  Evidently, the government is not concerned that Mr. Aprahamian might somehow learn aspects of its litigation strategy.

D.C. Circuit law is clear that factual materials of the sort the government continues to withhold do not constitute opinion work product.  "[T]he mere fact that an attorney ha[s] chosen to write a fact down [i]s not sufficient to convert that fact into opinion work product." *Boehringer*, 778 F.3d at 152.  Nor does it suffice merely if the "item … may reveal some inkling of a lawyer's mental impressions."  *Id.* at 151.  Instead, "heightened [work product] protection is triggered only if disclosure creates a real, nonspeculative danger of revealing the lawyer's thoughts," or something "worthy of the description of legal theory."  *Id.* at 152-53.  As discussed above, there is no such danger here.[8]

Even if the notes contained some opinion work product (which Mr. Aprahamian disputes), the remedy would be to redact those portions, rather than to deny Mr. Aprahamian access altogether.  *See Boehringer*, 778 F.3d at 152 ("[W]here a document contains both opinion and fact work product, the court must examine whether the factual matter may be disclosed without revealing the attorney's opinions.").  Although the government claims that its notes "inextricably intertwine[]" opinions with factual content (*Touhy* Resp. 3), it does nothing to substantiate that assertion, which is readily disproved by reading the notes themselves.

_____

[8] *See, e.g.*, *id.*; *Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) ("purely factual material embedded in attorney notes" may be considered fact work product unless they reflect a sufficient "degree of [factual] selection"); *In re Vitamins Antitrust Litig.*, 211 F.R.D. 1, 5 (D.D.C. 2002) (interview notes were fact work product when they constituted "counsel's attempts to record questions and responses as accurately and completely as possible"); *In re John Doe Corp.*, 675 F.2d 482, 492-93 (2d Cir. 1982) (interview notes were fact work product when "[w]hat [was] sought [was] what [employees] said, not the attorney's evaluation of potential liability or thoughts as to use at trial"); *SEC v. Thrasher*, No. 92-cv-6987, 1995 WL 46681, at *6 (S.D.N.Y. Feb. 7, 1995) ("summaries of what a party or witness has stated to the attorney or his representative" are "treated as factual work product").

**B.    Mr. Aprahamian's Need For The Materials Overrides Any Fact Work Product Protection**

To the extent the notes are protected as factual work product, that protection is easily overcome because (1) Mr. Aprahamian has a "substantial need" for the notes, (2) he "cannot, without undue hardship, obtain their substantial equivalent by other means," and (3) they are otherwise the proper subject of discovery.  Fed. R. Civ. P. 26(b)(3)(A).

The test in Rule 26(b)(3) "merely shifts the standard presumption in favor of discovery and requires the party seeking discovery to show 'adequate reasons' why the work product should be subject to discovery." *Boehringer*, 778 F.3d at 153.  Although "some courts" have "ratchet[ed] up" the standard and "demanded a heightened showing," the D.C. Circuit has firmly rejected this approach. *Id.* at 154, 156 n.4.  Instead, the "moving party's burden is generally met if it demonstrates that [1] the materials are relevant to the case, [2] the materials have a unique value apart from those already in the movant's possession, and [3] 'special circumstances' excuse the movant's failure to obtain the requested materials itself." *Id.* at 155.

The government does not dispute that notes concerning the testimony of the cooperating witnesses are relevant to Mr. Aprahamian's defense.  If they were irrelevant, the government would not have produced them in the criminal case, and the government would not have dismissed the indictment shortly after their production.  While Mr. Aprahamian is presently unable to describe their contents (because the government insists on using the criminal protective order to gag him), it is an understatement to say that they "might be useful for purposes of impeachment." *Hickman*, 329 U.S. at 511.

The notes also have "unique value apart from [the materials] already in [Mr. Aprahamian's] possession." *Boehringer*, 778 F.3d at 155.  Indeed, the government has the most information of any party—having conducted an extensive investigation with grand jury

24

subpoenas, search warrants, attorney proffers, witness interviews, and mutual legal assistance requests to authorities in foreign countries—and nothing persuaded the government to drop the indictment against Mr. Aprahamian until he received copies of the notes.

There is no way for Mr. Aprahamian to "obtain the requested materials [him]self" without subpoenaing the notes from the government. *Id.* The government prepared the notes, and to Mr. Aprahamian's knowledge, no other party possesses a copy. Nor can Mr. Aprahamian obtain the "substantial equivalent" of the notes "without undue hardship." Fed. R. Civ. P. 26(b)(3)(A)(ii). The witnesses at issue cooperated with the government in exchange for leniency and are now cooperating with the civil plaintiffs or otherwise corroborating aspects of their claims. They have no incentive to recant their allegations against Mr. Aprahamian, so it would be futile to question them about the communications at issue without the documentary evidence that Mr. Aprahamian seeks.

These are "special circumstances" that overcome work-product protection. *Boehringer*, 778 F.3d at 155. As the D.C. Circuit has recognized, where witnesses are "unavailable, reluctant, or hostile," or "ha[ve] a lapse of memory or deviated from prior statements," their "contemporaneous witness statement[s]" are "typically … discoverable" even if embodied in attorney work product. *Id.* at 155-56. In *Doubleday*, for instance, where the plaintiff alleged that government officers "manipulated evidence" so that he would be prosecuted, the court ordered the production of notes and witness statements in the prosecutors' files, rather than requiring the plaintiff to depose all relevant parties first, because the "passage of time" and "potential bias" might lead deponents to give inaccurate or "self serving responses." 149 F.R.D. at 607-08.

A similar situation arose in *United States ex. rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419 (D.D.C. 2014), in which the court held that the defendant had "demonstrated a

substantial need for … law enforcement memoranda" of witness interviews. *Id.* at 425. The court noted that the "civil lawyers litigating this *qui tam* action ha[d] received a substantial advantage from having access to the fruits of the prior criminal investigation." *Id.* Because the memoranda could "reveal how the witnesses' testimony and recollections may have changed over time," they were "unique sources of … impeachment material for which there is no substitute." *Id.* at 426.

Here, too, the State attorneys general and other plaintiffs in the civil actions against Mr. Aprahamian have the benefit of cooperating witnesses whose testimony was developed during the government's criminal investigation. "[F]airness dictates" that Mr. Aprahamian should have the opportunity to show how that testimony was developed. *Id.*; *see also, e.g.*, *United States v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003, 2019 WL 1453063, at *6 (D. Minn. Apr. 2, 2019) (defendants "demonstrated both substantial need and the inability to otherwise obtain [government interview notes and memoranda] without undue hardship"); *Vitamins Antitrust Litig.*, 211 F.R.D. at 5-7 (compelling production of witness interview notes so that movants could explore "inconsistencies and equivocations" in testimony); *Elkins*, 250 F.R.D. at 27 (declining to "recognize the privilege as to [certain] documents because to do so would undermine the discovery process [and] deprive the Court of important evidence").

The Court should therefore override the government's invocation of work-product protection. If the Court requires further information concerning the contents of the notes, Mr. Aprahamian respectfully requests an *in camera* review and permission to supplement his motion if the *Aprahamian* court modifies the criminal protective order.

### C.    The Circumstances Would Be Sufficiently Compelling To Require The Production Of Any Opinion Work Product

As discussed above, the notes that Mr. Aprahamian seeks do not constitute opinion work product.  They are factual summaries—not prosecution memos or other deliberative communications.  To be clear, however, Mr. Aprahamian could make the "extraordinary showing" required to obtain the notes even if they did qualify as "opinion work product." *Boehringer*, 778 F.3d at 153.

Courts have ordered disclosure of "opinion work product" where "it goes to the heart of the issues in the litigation" and the requestor shows a "sufficient need."  *Tri-State Hosp. Supply Corp. v. United States*, No. 00-cv-1463 (HHK) (JMF), 2005 WL 3447890, at *6 (D.D.C. Dec. 16, 2005); *accord, e.g.*, *Doubleday*, 149 F.R.D. at 608; *Bolus v. Carnicella*, No. 15-cv-01062, 2020 WL 6531007, at *7-8 (M.D. Pa. Nov. 5, 2020).  For instance, in cases "involving allegations of prosecutorial misconduct related to a closed criminal investigation, the prosecutor's files are discoverable to the extent that the documents 'go to the heart' of the litigation, even where the file reveals 'core' or 'opinion' work product."  *Dixon v. City of Buffalo*, No. 19-cv-1678, 2023 WL 11819596, at *4 (W.D.N.Y. Jan. 19, 2023).  "[G]overnment misconduct" will "negate the attorney work-product privilege" if there is "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  *Wright v. U.S. Dep't of Just.*, 121 F. Supp. 3d 171, 186 (D.D.C. 2015).  In cases concerning attorney misconduct more generally, courts have held that "a lawyer's unprofessional behavior may vitiate the work product privilege" where it undermines the legal process the doctrine is intended to protect.  *Moody v. IRS*, 654 F.2d 795, 800 (D.C. Cir. 1981); *accord United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015); *Parrott v. Wilson*, 707 F.2d 1262, 1271-72 (11th Cir. 1983).  Courts have, for instance, "applied th[is] attorney-misconduct

27

exception when attorneys have obstructed … the search for the truth." *Pruco Life Ins. Co. v. Villarreal*, No. 17-cv-2795, 2020 WL 7263226, at *3 (S.D. Tex. Dec. 10, 2020).

Mr. Aprahamian has meritorious arguments for overriding any opinion-work-product protection, but the criminal protective order currently does not permit Mr. Aprahamian to explain their factual basis.  If the Court finds it necessary to decide this issue, then as noted above, Mr. Aprahamian respectfully requests that the Court conduct an *in camera* review or hold the motion in abeyance until the protective order is modified.  The government should not be permitted to hide behind the work-product doctrine to deprive Mr. Aprahamian of crucial evidence.

## V.    The Materials Are Not Subject To Federal Rule Of Criminal Procedure 6(e)

In addition to withholding its notes on grounds of work-product protection, the government has redacted its interview memoranda on grounds of "grand jury" secrecy, arguing that the redacted information "cannot be released under Criminal Rule 6(e)" because Mr. Aprahamian has not yet obtained "judicial authorization in the form of a court order."  (*Touhy* Resp. 4 (citing Fed. R. Crim. P. 6(e)(3)(E)(i))).  In particular, the government appears to have redacted ██████████████████████████████████████████.  These redactions are improper and cannot be permitted.  The redacted text does not "disclose a matter occurring before a grand jury," Fed. R. Crim. P. 6(e)(2)(B), so it is not subject to Rule 6(e), and Mr. Aprahamian is not required to seek a court order overriding grand-jury secrecy.[9]

The government has already conceded as much.  In Mr. Aprahamian's criminal case, the government produced the interview memoranda and notes to Mr. Aprahamian without obtaining

---

[9] To the extent that some very small proportion of the government's redactions cover genuine grand-jury information, this Court should limit the government to those redactions, subject to Mr. Aprahamian's right to seek an order overriding them in the Eastern District of Pennsylvania. *See* Fed. R. Crim. P. 6(e)(3)(F) ("A petition to disclose a grand-jury matter … must be filed in the district where the grand jury convened."); *accord Landis*, 303 F.R.D. at 426.

judicial authorization under Rule 6(e).  It produced these materials with none, or virtually none, of the redactions it now claims are required by Rule 6(e).  The government sought court authorization under Rule 6(e) only once, and *only* for the purpose of producing "grand jury transcripts."  (*Aprahamian* Dkt. 85 at 1).  By that time, on September 28, 2023, the government had already produced the interview memoranda and many of the notes.  The government never asked the court to bless its earlier productions, nor did it suggest that it needed court authorization with respect to the productions made after that date.  Evidently, the government did not believe that any of the information produced to Mr. Aprahamian, other than the grand jury transcripts, was subject to Rule 6(e).

This position was correct.  Rule 6(e) covers only "information that would tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors." *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 73 (D.C. Cir. 2018).  It does not cover "all matters occurring in the world that happen to be investigated by a grand jury," *Labow v. U.S. Dep't of Just.*, 831 F.3d 523, 529 (D.C. Cir. 2016), or "any and all information which has reached the grand jury chambers," *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 732 (D.C. Cir. 2008).

The information the government has redacted falls outside Rule 6(e).  The government redacted ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ fails to justify withholding under Rule 6(e)." *Labow*, 831 F.3d at 530; *accord Bartko*, 898 F.3d at 73.  For instance, in *Bagwell v. United States Department of Justice*, 588 F. Supp. 3d 58 (D.D.C. 2022), the court held that the government could not categorically withhold emails obtained via

grand jury subpoena because "binding D.C. Circuit case law preclude[d] the Court from applying such a broad rule," and the government "provided scant explanation as to why these documents would reveal anything about the grand jury, its investigation, or deliberations." *Id.* at 67-70. The redacted text would not reveal any such information either, which is why the government produced it to Mr. Aprahamian in the criminal case without prior court approval.[10]

Accordingly, Rule 6(e) does not provide any basis for the government to withhold information responsive to the Subpoenas.

## VI.    There Is No Basis For The Government's Redactions Of Names

Beyond grand-jury secrecy, the government has



. (*See, e.g.*, Thayamballi Decl. Ex. E at ████-FBI-REDACTED-00000001 – 2, ████-USPS-REDACTED-00000001, 14, 34).  There is no basis for such redactions, and they unfairly prejudice Mr. Aprahamian by hindering him from identifying individuals who may have discoverable information about what occurred during those sessions.  The Court should therefore order the government to remove the redactions.  *See Castellani v. City of Atlantic City*, 102 F. Supp. 3d 657, 665 (D.N.J. 2015) (rejecting redactions because the "names and identifying information of the witnesses and complainants" relevant to

---

[10] While the government does not claim to have withheld any notes or memoranda in their entirety based on Rule 6(e), any such withholding would be impermissible as well.  These materials do not disclose matters that transpired before the grand jury and merely reflect communications between the government and the cooperators or their counsel.  Mr. Aprahamian sought them "for [their] own sake [and] intrinsic value, rather than to learn what took place before the grand jury," *Bagwell*, 588 F. Supp. 3d at 68, and they would not "reveal [any]thing about the grand jury's identity, investigation, or deliberation," *Labow*, 831 F.3d at 529.  *See also, e.g.*, *Moore v. Hartman*, 102 F. Supp. 3d 35, 108-11 & n.61 (D.D.C. 2015) (interview summaries were not protected by Rule 6(e) when they were "derived from investigatory interviews conducted independently of the grand jury" and "not clearly linked to the grand jury").

the party's claims are "discoverable information"); *Estate of Serna v. Cnty. of San Diego*, 689 F. Supp. 3d 848, 869, 872 (S.D. Cal. 2023) (holding that defendant could redact "personal identifying information" like home addresses and social security numbers, but not "names and titles"); *cf. Ewalt v. GateHouse Media Ohio Holding II, Inc.*, No. 2:19-cv-4262, 2020 WL 4782860, at *2 (S.D. Ohio Aug. 18, 2020) (rejecting redactions of names and contact information because "[e]ven assuming that information is irrelevant" a party "is not permitted to redact it from an otherwise relevant document").

Moreover, withholding this information from Mr. Aprahamian is not the only means of protecting it. In the civil actions, the government has obtained "Privacy Act / Protective Orders" that confer specific, additional protections on materials the government produces pursuant to subpoena, above and beyond the requirements of the blanket protective orders that already govern discovery in those actions. (*Sandoz* Dkts. 536, 537; *Teva* Dkts. 558, 559; *MDL* Dkts. 3244, 3250; *see also, e.g.*, MDL Dkt. 1976). These orders address the government's concerns, but if it desires additional protections, nothing prevents it from seeking them from the courts presiding over those cases.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should compel the government to comply with the

Subpoenas and order disclosure of the materials and information it continues to withhold.


Dated:  April 16, 2025
        New York, New York                  Respectfully submitted,


<u>/s/ Fabien M. Thayamballi</u>

G. Robert Gage, Jr. (*pro hac forthcoming*)    Fabien M. Thayamballi (D.D.C. #1014910)
Gage Spencer & Fleming LLP           Christopher Johnson (*pro hac forthcoming*)
410 Park Avenue, Suite 900            Shapiro Arato Bach LLP
New York, New York 10022            1140 Avenue of the Americas, 17th Floor
(212) 768-4900                     New York, New York 10036
grgage@gagespencer.com             (212) 257-4880
                                  fthayamballi@shapiroarato.com
                                  cjohnson@shapiroarato.com


*Attorneys for Petitioner Ara Aprahamian*